# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES G. LA BELLA, as the Court-Appointed Receiver for MAK 1 Enterprises Group LLC, a Nevada limited liability company, and subsidiaries and affiliates; and THOMAS W. MCNAMARA,<br><br>Plaintiffs,<br>vs.<br>JASBIR SINGH BAINS, an individual; et al.,<br>Defendants. | CASE NO. 10-cv-1760 – BEN (WVG)<br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AGAINST RONALD TORRES, [Doc. No. 209]. |

Plaintiff Charles G. La Bella, as the Court-appointed receiver for MAK 1 Enterprises, filed this complaint against multiple Defendants to recover payments in connection with an alleged "Ponzi scheme." Presently before the Court is Plaintiff's motion for summary judgment against Defendant Ronald Torres. For the reasons set forth below, the Court **GRANTS** the motion.

## BACKGROUND

MAK 1 is a Nevada limited liability company, located in San Diego, California. (Compl. ¶ 5 [Doc. No. 1].) Until going into receivership, MAK 1 was controlled by Mohit Khanna. (*Id.*) The Complaint alleges that from July 2007 to 2009, MAK 1 and Khanna conducted an unregistered offering of securities and raised approximately $35 million from approximately 200 investors by promising very high "guaranteed" returns on investments in a short time frame. (*Id.* ¶ 62.) After

investigating MAK 1 and Khanna's conduct, the United States Securities and Exchange Commission ("SEC"), the United States Commodity Futures Trading Commission ("CFTC"), and the People of the State of California sued MAK 1 and Khanna and related parties in separate actions on August 17, 2009, alleging multiple violations of federal laws, including the Securities Exchange Act of 1934 and the Commodity Exchange Act of 1936. *See SEC v. Khanna*, Case No. 09-cv-1784 (S.D. Cal.); *CFTC v. Khanna*, Case No. 09-cv-1783 (S.D. Cal.). On September 3, 2009, this Court appointed a Receiver in the *SEC* and *CFTC* cases, and vested the Receiver with full power over all funds and assets of MAK 1 and its subsidiaries and affiliates. On November 1, 2010, Plaintiff Thomas W. McNamara was substituted as the Receiver for MAK 1.

Consistent with the powers granted to him in the *SEC* and *CFTC* cases, the Receiver conducted an investigation into MAK 1's financial transactions, which is still ongoing. (Compl. ¶¶ 67-69.) The Receiver determined that MAK 1 and Khanna were operating a fraudulent scheme that functioned as a Ponzi scheme,[1] whereby they used the money from the new investors to pay other earlier investors, to pay "referral fees" to those who found investors, and to also fund the personal expenses of Khanna and his family. (*Id.* ¶¶ 70-74.)

On August 23, 2010, Plaintiff filed the present complaint against multiple Defendants to recover payments made to them on behalf of MAK 1 and Khanna. The Complaint alleges that each Defendant (except certain "Commission Defendants" not relevant to this motion) deposited money into MAK 1's accounts. (*Id.* ¶ 77.) MAK 1 subsequently made distributions to Defendants in the form of "returns" or "profits." (*Id.* ¶ 78.) The Complaint alleges that the source of the distributions to Defendants were the funds provided by defrauded MAK 1 investors, and that these distributions were paid to Defendants in furtherance of MAK 1's Ponzi scheme. (*Id.* ¶ 79.) According to the Complaint, MAK 1 received no reasonably equivalent value or consideration in exchange for paying any of the distributions to Defendants. (*Id.* ¶ 80.)

Currently before the Court is Plaintiff's motion for summary judgment against Defendant Ronald Torres. The motion originally named two other Defendants, but they have since been

---

[1] "The term Ponzi scheme refers to a fraudulent scheme in which, rather than paying investor returns from investment income, initial investors are paid off with new contributions from additional investors." *United States v. Treadwell*, 593 F.3d 990, 993 n.2 (9th Cir. 2010).

dismissed from this action.[2] As to Defendant Torres, the Complaint alleges a cause of action for fraudulent transfer in violation of the California Uniform Fraudulent Transfer Act ("UFTA"), Cal. Civ. Code § 3439. (Compl. ¶¶ 97-104.) The Complaint alleges that Torres received $236,257.30 in "profits" from Khanna and MAK 1. (Compl., Ex. C.)

Torres filed an answer on March 3, 2011. Plaintiff filed the present motion for summary judgment on November 4, 2011. Torres did not file an opposition.[3] The Court took the motion under submission and decides it without oral argument pursuant to Civil Local Rule 7.1(d)(1).

## LEGAL STANDARD

Summary judgment is proper where the pleadings and materials demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material issue of fact is a question that a trier of fact must answer to determine the rights of the parties under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on the issue in question. *Id.*

The moving party bears "the initial responsibility of informing the district court of the basis for its motion." *Celotex*, 477 U.S. at 323. To satisfy this burden, the movant must demonstrate that no genuine issue of material fact exists for trial. *Id.* at 322.

The court must review the record as a whole and draw all reasonable inferences in favor of the non-moving party. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). To avoid summary judgment, the non-moving party need not produce evidence in a form that would necessarily be admissible at trial. *Celotex*, 477 U.S. at 324. However, unsupported conjecture or conclusory statements are insufficient to defeat summary judgment. *See Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008); *Hernandez*, 343 F.3d at 1112.

---

[2] The motion for summary judgment originally named Defendants Harish Bhardwaj and Karmjit Grewal, in addition to Defendant Torres. Bhardwaj and Grewal have since been dismissed based on the parties' joint motions. [*See* Doc. Nos. 228, 234.]

[3] Before being dismissed, Defendant Bhardwaj filed an opposition to Plaintiff's motion for summary judgment, and Plaintiff filed a reply to that opposition. [*See* Doc. Nos. 220, 224.]

Summary judgment cannot be granted solely because the non-moving party failed to oppose the motion. *See Martinez v. Stanford*, 323 F.3d 1178, 1183 (9th Cir. 2003); *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). Rather, where a party fails to properly address another party's assertion of fact, the court may grant summary judgment only "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." FED. R. CIV. P. 56(e)(3); *see also Henry*, 983 F.2d at 950 (motion for summary judgment may not be granted, even where the non-moving party fails to oppose it, where "the movant's papers are insufficient to support that motion or on their face reveal a genuine issue of material fact").

## DISCUSSION

### I. Liability under UFTA

In this case, Plaintiff seeks to disgorge $239,507.30 from Torres as "profits" due to fraudulent transfers under the California UFTA. The UFTA as adopted by California states in relevant part:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:
>
> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor[; or]
>
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:
>
> (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.
>
> (B) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

CAL. CIV. CODE § 3439.04(a).[4] "Courts have routinely applied UFTA to allow receivers or trustees in bankruptcy to recover monies lost by Ponzi-scheme investors." *Donell*, 533 F.3d at 767 (citing cases). "The Ponzi scheme operator is the 'debtor,' and each investor is a 'creditor.'" *Id.* "The profiting investors are the recipients of the Ponzi scheme operator's fraudulent transfer." *Id.*

Under UFTA, payments to "innocent investors" are avoidable as fraudulent transfers to the

---

[4] All courts construing UFTA state there is an "or" between subsections (a)(1) and (a)(2). *See Donell v. Kowell*, 533 F.3d 762, 767 n.1 (9th Cir. 2008).

extent those investors "have received payments in excess of the amounts of principal that they originally invested." *Id.* at 770. As the Ninth Circuit explained, "[t]he policy justification is ratable distribution of remaining assets among all the defrauded investors. The 'winners' in the Ponzi scheme, even if innocent of any fraud themselves, should not be permitted to 'enjoy an advantage over later investors sucked into the Ponzi scheme who were not so lucky.'" *Id.* (citation omitted).

In *Donell*, the Ninth Circuit described two theories of liability on which the Receiver may proceed—"actual fraud" and "constructive fraud":

> Under § 3439.04(a)(1), codifying the "actual fraud" theory, the receiver alleges that the debtor (Ponzi scheme operator) made transfers to the transferee (the winning investor) "with actual intent to hinder, delay, or defraud" the creditors (the losing investors). "The mere existence of a Ponzi scheme is sufficient to establish actual intent" to defraud. Under § 3439.04(a)(2), codifying the "constructive fraud" theory, the receiver alleges that the transfer of "profits" to the winning investor was made "without receiving a reasonably equivalent value in exchange for the transfer," because profits gained through theft from later investors are not a reasonably equivalent exchange for the winning investor's initial investment. Proof that transfers were made pursuant to a Ponzi scheme generally establishes that the scheme operator "was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction," or "intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due."

*Id.* at 770-71 (most internal citations omitted). The Ninth Circuit noted that "whether the receiver seeks to recover from winning investors under the actual fraud or constructive fraud theories generally does not impact the amount of recovery from innocent investors." *Id.* at 771. In the present case, Plaintiff asserts that it is entitled to summary judgment under both theories.

Plaintiff has met its burden of showing that it is entitled to recovery under the "actual fraud" theory. Based on the actual fraud theory, a transfer is fraudulent if a Ponzi scheme operator made the transfer "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." CAL. CIV. CODE § 3439.04(a)(1). "[T]he mere existence of a Ponzi scheme is sufficient to establish actual intent" to defraud. *In re AFI Holding, Inc.*, 525 F.3d 700, 704 (9th Cir. 2008) (citation and internal quotation marks omitted). The existence of a Ponzi scheme may be shown by circumstantial evidence. *In re Agric. Res. & Tech. Group, Inc.*, 916 F.2d 528, 534-35 (9th Cir. 1990) ("*Agritech*"). In this case, Plaintiff submitted evidence showing that Defendants and other investors deposited money into MAK 1's accounts, that MAK 1 subsequently made distributions to Defendants in the form of "returns" on those investments, and that MAK 1 did so despite the fact that no legitimate investments were made

by MAK 1. Moreover, the Court may take judicial notice of Khanna's guilty plea agreement, whereby he admitted, *inter alia*, that: (1) "MAK 1 was not a successful investment company that engaged in a propriety foreign currency trading program;" (2) "investor funds were not invested in foreign currency trading programs;" (3) "MAK 1 did not have the financial ability to pay the high returns promised to investors;" (4) he "knew that the high returns paid to investors by MAK 1 came from new investor money and not from foreign currency trading programs;" and (5) "investor funds were used to pay exorbitant commissions to venture partners which was not disclosed to investors." (*See* Plea Agreement in *United States v. Khanna*, Case No. 10-cr-2271-LAB (S.D. Cal. June 17, 2010), attached as Ex. 3 to Pl. RJN [Doc. No. 209-8].) The Court may properly consider Khanna's Plea Agreement in determining that he operated a Ponzi scheme. *See In re Slatkin*, 525 F.3d 805, 811-16 (9th Cir. 2008) ("[A] debtor's admission, through guilty pleas and a plea agreement admissible under the Federal Rules of Evidence, that he operated a Ponzi scheme with the actual intent to defraud his creditors conclusively establishes the debtor's fraudulent intent under . . . California Civil Code § 3439.04(a)(1), and precludes relitigation of that issue."). Based on the foregoing, Plaintiff has sufficiently demonstrated the existence of a Ponzi scheme operated by Khanna and MAK 1. This, in turn, establishes the "actual intent" to defraud required for liability under § 3439.04(a)(1).

Because Plaintiff established liability under the "actual fraud" theory, the Court need not consider whether Plaintiff also established liability under the "constructive fraud" theory.

## II. Amount of liability

To determine the amount of liability, the Court must net the amounts Torres received from Khanna and MAK 1 against any deposits he made. *See Donell*, 533 F.3d at 773. In support of its motion for summary judgment, Plaintiff submits a declaration of Jeanne Goddard, a certified public accountant, who conducted forensic accounting and reconstruction of MAK 1's bank records and investor database. (*See* Goddard Decl. [Doc. No. 209-3].) Goddard asserts that using the reconstructed database and the underlying banking and other financial records, she verified that the total amount received by Torres in excess of his deposits into MAK 1 was $239,507.30. (*Id.* ¶¶ 30-32, Ex. D.) Having reviewed all of the supporting documentation submitted by Plaintiff, the Court is satisfied that liability in the amount of $239,507.30 is supported by the record.

1  Plaintiff also seeks pre-judgment interest calculated from the date of each disbursement. The
2  award of pre-judgment interest is within the sound discretion of the Court. *In re Slatkin*, 243 Fed.
3  App'x 255, 259 (9th Cir. 2007). The Court looks to state law to determine the interest rate. *See id.*
4  (citing *In re Acequia, Inc.*, 34 F.3d 800, 818 (9th Cir. 1994)) (applying California law); *Agritech*, 916
5  F.3d at 541-42 (applying Hawaii law). In this case, the Court finds that Plaintiff is entitled to pre-
6  judgment interest at the rate of 7% from August 23, 2010, which is the date on which the action was
7  commenced. *See In re Slatkin*, 243 Fed. App'x at 259-60 (awarding pre-judgment interest at the
8  California rate of 7% from the date on which the action was commenced by the trustee).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment against Defendant Torres is **GRANTED**. Judgement is entered in favor of Plaintiff and against Defendant Torres in the amount of $239,507.30, plus pre-judgment interest at the rate of 7% from August 23, 2010.

**IT IS SO ORDERED.**

Date: May **29**, 2012

Honorable Roger T. Benitez
United States District Judge